### NIELSON v. LAFFLIN.

#### (Supreme Court, General Term, Fifth Department.    January 18, 1893.)

**1. EQUITY—RESCISSION OF DEED—INADEQUATE CONSIDERATION.**
> In an action to set aside a deed alleged to have been procured by undue influence and for a grossly inadequate consideration, testimony that the land, at the time of the transaction, was worth four times the consideration agreed to be paid, and that it had greatly appreciated in value shortly before by reason of certain public improvements in the vicinity, will support a finding that the consideration was inadequate, though the land had been sold within a year for a sum not greatly exceeding the consideration named in the deed.

**2. SAME—UNDUE INFLUENCE—MENTAL CAPACITY.**
> A deed executed by a married woman to her mother while the grantor was seriously ill, and under the influence of liquor, opiates, and anodynes, for a consideration grossly inadequate, without any previous bargain or negotiation between the parties, the transaction being conducted by means of direct questions or statements, the only answers to which were nods or the ex-

pressed assent of the grantor, who was acting without advice, legal or other-
wise, will be set aside as procured by undue influence while the grantor was
mentally incapacitated from doing business, though before her illness she
was a woman of considerable experience in business affairs, and capable of
protecting her own interests, and though no confidential relations subsisted
between her and the grantor.

Appeal from special term, Niagara county.

Action by Mary Nielson against Alice Lafflin to set aside a deed.
From a judgment in plaintiff's favor, defendant appeals.   Affirmed.

Argued before DWIGHT, P. J., and MACOMBER and LEWIS, JJ.

George Clinton, for appellant.

Ely & Dudley, for respondent.

MACOMBER, J.   This action was brought to set aside a deed dated
January 7, 1891, executed by the plaintiff to the defendant, conveying
to the latter a farm in the town of Niagara, Niagara county, N. Y., of
about 50 acres of land.   The plaintiff, who is a married woman, and
a daughter of the defendant, was taken seriously ill in November, 1890,
with a disease described as dropsy, caused by an enlargement of the
liver.   The character of the disease gradually increased in virulence
until the 25th day of November, 1890, when it had become dangerous,
and the plaintiff was then confined to her bed, and suffered great phys-
ical pain, and, to allay such pain, took large quantities of anodynes
daily.   These anodynes consisted of spirituous liquors and morphine
administered under medical prescriptions.   The physician in charge of
the case at this time was in attendance upon the patient from two to three
times a day.   There was also employed in behalf of the plaintiff a pro-
fessional nurse.   During a greater portion of the time between the 25th
day of December, 1890, and the 7th day of January, 1891, the plain-
tiff was unconscious or irrational, being weak both in body and mind,
and incapable of transacting any business which called upon her for the
exercise of judgment.   The defendant, who had not for some time pre-
viously been on friendly terms with the plaintiff, came to the plaintiff's
house on the 25th day of December, 1890, and assisted in the charge and
care of the plaintiff's illness, and the management of her household, until
January 10, 1891.   The trial judge has found that on the 7th day of
January, 1891, while the plaintiff was under the influence of liquors,
opiates, and anodynes, and while she was very sick and weak mentally
and physically, and incapacitated from doing business which would
call for the exercise of her mental faculties or judgment, and through
the procurement and fraud of the defendant in taking advantage of her
condition, and through the exercise by the defendant of her influence
unduly exerted over the plaintiff, the latter executed and delivered the
warranty deed of the premises above mentioned.   The plaintiff in this
transaction did not have the benefit of the advice of legal counsel or of
any other person, and the only consideration for the deed was the as-
sumption by the defendant of a mortgage of $3,258 then existing on
the premises, and a debt owing by the plaintiff to John J. McIntyre in
the sum of $708.93.   Having found as a fact that the deed was obtained
by the defendant through the exercise of undue influence under the cir-

cumstances stated, and for a grossly inadequate consideration, at a time when the plaintiff did not know or comprehend the legal effect of her act, the court set aside the same upon the plaintiff's reimbursing the defendant for payment by her of the McIntyre debt of $708.93, and interest on the outstanding mortgage from January 7, 1891. At the request of the defendant's counsel the court found, in addition to the matters contained in his formal decision, that prior to her illness, and prior to the transaction above mentioned, the plaintiff was a woman of considerable experience in business affairs, and capable of conducting and understanding business transactions, and able to protect her own interests, and at this time the defendant did not occupy, and had not been occupying, any confidential relations towards the plaintiff.

It is contended by the counsel for the appellant that the court is in error in finding that the consideration agreed to be paid by the defendant for the conveyance was grossly inadequate. Certain witnesses testified that the property, at the time of the conveyance, was worth upwards of $14,000, and this estimate the learned court has adopted in fixing the actual valuation of the lands. This conclusion is controverted by the appellant's counsel, upon the ground that the conclusion of the witnesses was entirely speculative, for the same lands had been sold within a year of this transaction for a much less price. . The defense in this particular relied upon is that the premises had been sold within a year before this conveyance for a sum which would go to show that they were scarcely of greater value than the sum which the defendant had agreed to pay, but no witness is called by the defendant to testify that at that particular time the lands were not worth at least the sum of $14,000; for the fact was shown and not controverted, that, by reason of certain public improvements in and around Niagara Falls, lands adjacent and in that vicinity had greatly increased in value within a short time immediately preceding this transaction. From the evidence, therefore, we conclude that the learned trial judge was correct in his conclusion that there was a grossly inadequate consideration for the conveyance executed by the plaintiff to the defendant, and upon this ground, as well as for the reason that the plaintiff, at the time of executing the agreement, was not conscious of the act which she was doing, we think the deed was properly set aside. Taking the evidence as a whole, the learned judge could scarcely have come to a more satisfactory conclusion than he has reached in regard to the lack in the mental condition of the plaintiff at the time of executing the deed, and for several days previously thereto. A most extraordinary fact is made to appear upon this branch of the case, and that is that at no time antedating the deed was there any bargain or any negotiation for a transfer of this property by the plaintiff to the defendant. Had the defendant by her own testimony, or otherwise, shown that the deed was the result of a bargain for the sale and purchase made in the usual form, such fact would have gone far in vindicating the defendant from the charge of taking undue advantage of the physical and mental condition of her daughter to obtain from the latter all of her property, with a trifling exception, at a price not to exceed one fourth of its real value. As

was pointed out by the learned trial judge in his opinion, the business was conducted without any explanation of the transaction, and by means of direct questions or statements, the only answer to which was a nod or expressed assent of the plaintiff, and it can readily be seen, from the manner in which this transaction was conducted, that the witnesses to it had but slight opportunity to estimate or measure the mental condition of the plaintiff at the moment. The testimony of Mr. McIntyre, which evidently was designed to help the defendant over the great stress of this part of the case, falls far short in its purpose. He testified to a conversation that he had with the plaintiff, which he fixes in the latter part of December, 1890, when she told him that, on account of her illness and the condition of her affairs generally, she would like to adjust some of her matters, and had made an arrangement with Mrs. Lafflin to pay her indebtedness, "or some statement of that kind, and that she was owing me some money. She wanted me to arrange it so that my claim would be paid—settled; and wanted me to release the claim I had in this piece of property,—a half interest." This evidence can scarcely be deemed to be any contradiction to the plaintiff's case. It follows that the judgment appealed from should be affirmed.

Judgment appealed from affirmed, with costs. All concur.